UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
|
SUSAN BRUSH SWANSON #474138,                    |        Case No. 1:07-cv-292
                                                |
          Petitioner,                           |        HONORABLE PAUL L. MALONEY
                                                |
               v.                               |
                                                |
THOMAS DeSANTIS,                                |
                                                |
          Respondent.                           |
                                                |
_____

### Opinion and Order

**Sustaining in Part and Overruling in Part the Petitioner's Objections;**
**Adopting in Part and Rejecting in Part the Report and Recommendation;**
**Denying the Motion to Dismiss the Petition without Prejudice;**

**Permitting the Petitioner to Proceed on All Claims Except *Schaefer* Claim;**
**Holding *Schaefer* Claim in Abeyance While Swanson Pursues State-Court Remedies**

For the reasons that follow, the court concludes that Swanson has exhausted all but one of her claims for habeas relief, but that under the circumstances, the unexhausted claim should be held in abeyance rather than dismissed.  The court will deny the motion to dismiss the petition.

Procedural History in this Court.

Susan Brush Swanson ("Swanson") filed a petition for a writ of habeas corpus in March 2007, along with a brief in support of her petition.  As ordered by the court, Swanson supplemented her petition in May 2007, and the petition and accompanying documents were served on the Michigan Attorney General in July 2007.  In December 2007, the respondent filed a motion to

dismiss the petition; Swanson timely filed an opposition brief in January 2008. The respondent filed Rule 5 material, including preliminary-examination transcripts and jury trial transcripts, in February 2008. The respondent did not file a reply brief.

Trial in Michigan State Court.

Swanson was tried in Michigan state court on one charge of operating a motor vehicle while under the influence of intoxicating liquor and causing death, and one charge of failure to stop at the scene of a serious personal-injury accident, in violation of MICH. COMP. LAWS § 257.625(4) and § 257.617, respectively. *See People v. Swanson*, 2005 WL 1459495, *1 (Mich. App. June 21, 2005) (p.c.) (P.J. Kelly, JJ. Sawyer & Wilder). During the fourteen-day trial, the prosecution advance three alternate theories on count one: operating a motor vehicle under the influence of intoxicating liquor, operating a motor vehicle with an unlawful blood alcohol level ("BAL"), and operating a motor vehicle while impaired. *See Swanson*, 2005 WL 1459495 at *2.

Swanson presented testimony from a traffic-reconstruction expert who specialized in driving behavior and decision-making in response to driving stimuli. *See Swanson*, 2005 WL 1459495 at *3. Swanson's expert testified that based on the trajectory of the pedestrian's body, the pedestrian had been walking from Swanson's right to her left, i.e., he was walking into the street when he was hit. *Id.* Swanson's expert opined that the pedestrian had the best chance to avoid the accident because he was walking on a road that was dimly lit and few cars traveled on that road at that time of night. *Id.* Although Swanson's expert acknowledged that alcohol could affect response time, he attributed the cause of the accident to the pedestrian walking into the path of the vehicle, and he estimated that Swanson had had only a 50% chance of avoiding the accident. *Id.*

The medical examiner testified that the pedestrian's symmetrical bruising (on the back of

both thighs) was inconsistent with being struck in the side, suggesting that the pedestrian was facing the vehicle straight-on when he was hit. *See Swanson*, 2005 WL 1459495 at *3. The examiner noted, though, that the pedestrian would probably have had a broken weight-bearing leg – which he apparently did not – if he had been struck straight-on. *Id.*

The trial court heard extensive eyewitness testimony regarding Swanson's drinking that evening. The prosecution theorized that Swanson consumed at least 7 drinks: they examined the itemized restaurant bill, subtracted the drinks consumed by Swanson's two companions, adding at least one of two shots that the bartender gave the party *gratis*, and adding the alcohol that she drank at one James Blanchard's apartment. *See Swanson*, 2005 WL 1459495 at *4. Swanson told police that she had had 3-4 vodka tonics and an appetizer at the restaurant; the police claimed that Swanson's friend Dena reported Swanson drinking 6 to 7.5 vodka tonics during the evening, which Dena denied saying. *Id.* On the other hand, four people testified that Swanson's conduct did not suggest that she was intoxicated: two of Swanson's companions, Dena Swanson and James Blanchard, and the bartender and general manager of the restaurant/bar called the Harrison Roadhouse. *Id.*

Assuming that Swanson drank "3 or 5 vodka tonics with three shots in four hours", the prosecution's toxicology expert estimated that Swanson had a BAL between 0.097 and 0.137 at midnight, decreasing to 0.082 - 0.162 at 1:00 a.m. and then 0.067 - 0.147 at 2:00 a.m. *See Swanson*, 2005 WL 1459495 at *4. He calculated these estimates by using the so-called Widmark Method, which incorporates the drinker's weight, sex, type of alcohol, amount of alcohol, absorption rate, and elimination rate, and he assumed an elimination rate of 0.015. *Id.* at *4 and n.5. On cross-examination, Swanson's counsel asked the prosecution's toxicology expert to calculate BAL

estimates using a faster elimination rate (0.018), adding thirty minutes for "burn off", and lowering the amount of alcohol per shot.  *Id.* at *5.  Using these assumptions, the prosecution's expert estimated Swanson's BAL would have been only 0.04 at 12:30 a.m., falling to 0.031 at 1:30 a.m. and finally to 0.022 at 1:30 a.m.  *Id.*

Swanson's toxicology expert criticized the Widmark Method because it yields only *maximum* BALs, and he testified that the generally accepted elimination rate is not the .015 used by the prosecution's expert, but 0.02 or higher for females.  *See Swanson*, 2005 WL 1459495 at *5. Assuming that Swanson consumed three drinks with 1.25 ounces of 80-proof liquor, the defense toxicology expert estimated that her BAL would have already been zero at 12:30 a.m., and of course also at 1:00 a.m. and 1:30 a.m.  *Id.*  He observed that if a person sips a drink slowly, the elimination rate may exceed the absorption rate, such that consuming the drink will not necessarily increase the individual's BAL.  *Id.*

Motion for Directed Verdict.

After the prosecution's case-in-chief, Swanson moved for a directed verdict on both counts. *See Swanson*, 2005 WL 1459495 at *5.  On count one, Swanson's counsel emphasized that Dena Swanson and James Blanchard had testified that Swanson was not impaired at the end of the evening.  The trial court denied the motion as to count one, however, reasoning that the jury could infer that she was drinking before the accident, was intoxicated at the time of the accident, her intoxication caused her to leave the roadway and strike the decedent, and therefore that her intoxicated driving was a substantial cause of the decedent's death.  *Id.*  The trial court also denied the direct verdict on count two, failing to stop at the scene of a serious personal-injury accident.  The judge reasoned that the damage to Swanson's vehicle, and the hair, blood and denim fibers on the

vehicle could support the finding that Swanson knew she had been involved in a serious personal-injury accident. *Id.*

Conviction and Motion for New Trial.

The jury convicted Swanson on both counts, and she moved for a new trial or for judgment notwithstanding the verdict. *See Swanson*, 2005 WL 1459495 at *6. Swanson contended that the trial court erred in four ways: (1) admitting the testimony of the prosecution's toxicology expert, (2) improperly instructing the jury on the unlawful-BAL charge, (3) failing to instruct the jury that because the police never performed a chemical test, none of the presumptions of Mich. Comp. Laws § 257.625a(9) applied, and (4) refusing to instruct the jury that the decedent committed a civil infraction by walking with traffic, which prevented the jury from considering his contributory negligence per se while deliberating on the lesser-included charge of negligent homicide. *Id.* Swanson also contended that the verdict was against the great weight of the evidence, as there was no evidence that Swanson was visibly impaired as required by *People v. Lambert*, 235 N.W.2d 338 (Mich. 1975). *See Swanson*, 2005 WL 1459495 at *5.

The trial court denied the motion for a directed verdict, adhering to his evidentiary rulings and jury instructions and holding that the verdict was not against the great weight of the evidence and did not constitute a miscarriage of justice. *Id.* The court sentenced Swanson to concurrent terms of 54-180 months and 36-60 months. *Id.* at *1.

Michigan Court of Appeals Affirms.

**Swanson appealed to the Michigan Court of Appeals,** asserting seven assignments of error, and that court affirmed. *Swanson*, 2005 WL 1459495 at *1.

**Swanson first contended that a chemical test is required to establish the offense of**

**unlawful BAL**, and that the trial court therefore erred by refusing to instruct the jury that it could convict without a chemical test result in evidence. *Swanson*, 2005 WL 1459495 at *7. The Michigan Court of Appeals rejected this argument, holding that while a BAL chemical test result can give rise to certain presumptions about impairment under MICH. COMP. LAWS § 257.625a(6) - (9), such a test result is only one permissible avenue for proving the 0.10 BAL needed to convict for unlawful BAL under MICH. COMP. LAWS § 257.625(1)(b). *Swanson*, 2005 WL 1459495 at *7-9.

**Swanson does not raise this ruling in the instant petition**, presumably because federal habeas corpus relief generally does not lie for errors of state law. *See Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) (Rehnquist, C.J.) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *Richmond v. Lewis*, 506 U.S. 40, 51 (1992) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

**Swanson's second argument on appeal was that the trial court erred by failing to properly instruct the jury on causation.** *Swanson*, 2005 WL 1459495 at *9-10. The Michigan Court of Appeals refused to consider this argument because Swanson had not raised it in the trial court. *Id.* at *10. Swanson does assert this alleged instruction error as a ground for federal habeas relief. Swanson contends that the trial judge violated his right to have the jury decide whether or not her conduct was the proximate cause of the death of the pedestrian. *See* Petition for Writ of Habeas Corpus filed March 21, 2007 ("Pet") at 16 (citing *US v. Gaudin*, 515 U.S. 506, 522-23 (1995) and *Patterson v. Haskins*, 316 F.3d 596 (6th Cir. 2003)). Specifically, Swanson contends that although the prosecution was allowed to submit three alternative theories of guilt on count one – driving under the influence, driving while impaired, and driving with an unlawful BAL – the trial judge omitted from the unlawful-BAL theory from its instruction on causation. Pet at 16-17. That is, the judge told the jury only that "the defendant's intoxication or impaired driving was a

substantial cause of the victim's death."  Pet at 17 (quoting Oct. 6, 2003 Trial Tr. 124).

Swanson acknowledges that she did not object at trial, in so many words, to the judge's failure to include the unlawful-BAL theory in the causation instruction (the basis for the Michigan Court of Appeals' refusal to consider the issue).  She contends, however, that she adequately preserved the issue for appellate review because her trial counsel did object to allowing the prosecution to employ the unlawful-BAL theory to the jury at all.  As Swanson puts it,

> While application of a state procedural rule could preclude review under the AEDPA, 28 USC 2254(b)(1)(A), the bar to review should not be applied here because trial defense counsel did object to inclusion of "unlawful blood alcohol" as a possible theory of liability under the charge made in Count I.  This objection should have been deemed sufficient to preserve the issue even though it did not focus directly on the failure to include that theory in the causation element.  Having drawn the trial court's attention to that issue the trial judge was given a full opportunity to correct the error.  Excluding consideration of an appellate challenge in this context defeats the purpose of the preservation rule.
>
> The Court of Appeals imposed upon the defense the duty to challenge and re-write an instruction it had already, definitively opposed.  * * *  Therefore, the Michigan Court of Appeals['] determination on this issue was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Pet at 17 (paragraph break added).  Swanson explains how the trial court's failure to include the unlawful-BAL theory in the causation instruction could have prejudiced her:

> If any juror relied on the "unlawful blood alcohol level" theory to determine liability, due process required that the juror specifically find that the death was caused by Petitioner's unlawful blood alcohol level.  Causation is an essential element of the offense for all potential theories of liability under Count I.  The record in this case confirms that the causation element was not included with respect to the unlawful blood alcohol level theory.  Petitioner vehemently contested the claim that she was under the influence or impaired at the time of the collision.
>
> Therefore, it is likely that one or more of the jurors relied on the objective, unlawful blood alcohol theory of liability.  Failure to specifically instruct that the Petitioner's blood alcohol level must have caused the deceased's death constitutes a violation of Petitioner's right to due process of law which this Court can and should remedy.

Pet at 18. (Paragraph break added).

**Swanson's third argument on appeal was that the trial court failed to properly inform the jury of the pedestrian's contributory negligence.**   Specifically, Swanson argues that the judge's instruction on the count one offense (operating under the influence of intoxicating liquor causing death, or "OUIL") should have instructed the jury that the pedestrian committed a civil infraction by walking with traffic contrary to MICH. COMP. LAWS § 257.655, and that the jury could consider this to be contributory negligence.  Swanson emphasizes that the accident in a 55-mph zone on an unlit road, between 12:30 and 1:30 in the morning, and evidence at trial indicated that the pedestrian was *along*, then *into* the roadway *with traffic, not against traffic* as required by statute. *See* Pet at 18.  Swanson points to the testimony of the prosecution's own accident-reconstruction expert (Holmes)  that any *sober* driver would have had difficulty seeing the pedestrian under those conditions, and her expert Muttart's testimony that only about one half of all drivers in that setting at that time would have seen the pedestrian in time to avoid hitting him.  *See* Pet at 18.  Swanson further emphasizes that the defense's forensic pathologist (Spitz) testified that the pedestrian's injuries were consistent with someone stepping in front of the car at the time of the collision, all of which strongly suggested that the sole cause of the collision was the pedestrian's conduct, not Swanson's driving, whether or not affected by alcohol.  *See* Pet at 18-19.

On this record, Swanson argued, the trial judge's failure to give the desired contributory-negligence instruction in connection with the OUIL charge deprived her of a substantial defense. *See Swanson*, 2005 WL 1459495 at *10.  The Michigan Court of Appeals rejected this argument, pointing out that Swanson's trial counsel had requested the contributory-negligence instruction only when the trial court instructed the jury *on the lesser-included offense* of negligent homicide, not

-8-

when it instructed the jury on the charged OUIL offense itself.  *Id.* at 10-11.  Therefore, the Court of Appeals found that Swanson's trial counsel waived any objection to the failure to include the contributory-negligence language in the OUIL instruction.  *Id.* at 11.

Swanson now raises the failure to include the contributory-negligence language in the OUIL instruction as a ground for federal habeas relief.  *See* Pet at 18-19.

**Swanson's fourth argument on appeal was that even where the trial court gave the contributory-negligence instruction – on the lesser-included offense of negligent homicide – the instruction was inadequate.**  *See Swanson*, 2005 WL 1459495 at *11.  Specifically, Swanson contended that the contributory-negligence instruction was inconsistent with *People v. Moore*, 631 N.W.2d 779 (Mich. App. 2001) (reversing a conviction and holding that trial court abused its discretion in excluding evidence that the victim of an automobile accident had marijuana [sic, presumably THC] in his blood and was not wearing a seatbelt, reasoning that the evidence was relevant to whether defendant's negligence had caused the victim's death).  *See Swanson*, 2005 WL 1459495 at *11.  In the instant case, the Michigan Court of Appeals held that Swanson's reliance on *Moore* was misplaced because that case was distinguishable:

> Here, although the trial court denied defendant's request that the jury be informed that the victim's act of walking with traffic constituted a civil infraction, the jury was permitted to hear evidence of [the pedestrian]'s ambulatory path and defendant was permitted to argue that [the pedestrian] contributed to, or was the cause of the accident.  The record shows [that] defendant's expert, Muttart, opined that [the pedestrian] had the best opportunity to avoid the accident, and that [he] moved into the path of defendant's vehicle.  In closing arguments, defense counsel was further permitted to argue the defense theory that [the pedestrian] contributed to the accident.  Finally, the trial court read CJI 2nd 16.14(4) and (5) to the jury.  We therefore, conclude, that defendant has not established instructional error based on a failure to inform the jury of the victim's contributory negligence [in connection with the lesser-included offense of negligent homicide].

*See Swanson*, 2005 WL 1459495 at *11.

-9-

**Swanson's fifth argument on appeal was that her right to a unanimous verdict was violated because the verdict as stated by the foreman failed to indicate which of the three theories of criminal liability the jurors used to convict on count one.** Specifically, Swanson argued that the jurors may have improperly presumed liability on the per se or unlawful-BAL theory, the most serious offense. *See Swanson*, 2005 WL 1459495 at *12. The Michigan Court of Appeals first noted the trial judge's conclusion, in denying Swanson's motion for a new trial, that Swanson waived this objection because she had failed to request a special-verdict form. *Id.* The Court of Appeals then determined that even if Swanson did not forfeit the unanimous-verdict argument, the verdict as read did not violate her right to a unanimous verdict: "When a statute lists alternative means of committing an offense, and those offenses in and of themselves do not constitute separate and distinct offenses, 'jury unanimity is not required with regard to the alternate theory.'" *Swanson*, 2005 WL 1459495 at *12 (quoting *People v. Johnson*, 468 N.W.2d 307 (Mich. App. 1991)).

Swanson does <u>not</u> assert the unanimous-verdict issue as a ground for federal habeas relief.

**Swanson's sixth argument on appeal was that the trial court erred in assessing ten points, over her objection, in scoring Offense Variable ("OV") 19**, interference or attempt to interfere with the administration of justice under MICH. COMP. LAWS § 777.49 subsection c. *Swanson*, 2005 WL 1459495 at *13. Rejecting Swanson's reliance on *People v. Deline*, 658 N.W.2d 164 (Mich. App. 2004), the Court of Appeals found that the OV 19 assessment was supported by evidence that Swanson parked her car in her garage away from public view, brought her car to the dealership for repairs just before it closed and intended to leave her vehicle there over the weekend, and failed to render assistance or at least anonymously contact the police about the pedestrian. *Swanson*, 2005 WL 1459495 at *14. The Court of Appeals determined that the trial court could

reasonably disbelieve Swanson's claim that she believed that she had merely struck a construction barrel and did not inspect her vehicle, concluding instead that her "conduct the following day as if nothing out of the ordinary occurred [was] an abortive attempt to mislead the authorities and to bolster [her] claim of ignorance." *Swanson*, 2005 WL 1459495 at *14 (quoting the trial judge).

Swanson does <u>not</u> assert the alleged insufficiency of evidence to support the OV 19 interference assessment as a ground for federal habeas relief.

**Swanson's seventh argument on appeal – raised in a supplemental brief by leave of the Michigan Court of Appeals- - was that the trial court's scoring findings violated her right to a jury trial under *Booker* and *Blakely*.** *Swanson*, 2005 WL 1459495 at *14. Swanson acknowledged that *People v. Claypool*, 684 N.W. 278 (Mich. 2004) stated that *Blakely* does not apply to Michigan's indeterminate sentencing scheme, but she argued that that statement in *Claypool* was mere dictum and so not binding. *Swanson*, 2005 WL 1459495 at *14. The Michigan Court of Appeals rejected this argument on the authority of an earlier published panel decision. *Id.* (following *People v. Dorhan*, 689 N.W.2d 750 (Mich. App. 2004)).

Swanson asserts the alleged *Booker* error as a ground for federal habeas relief. *See* Pet at 25-29. Specifically, Swanson contends that of the five OVs scored by the court, only one, OV3 (the death of the victim) was necessarily determined by the jury's verdict. *See* Pet at 28. Swanson contends that the trial judge violated her Sixth Amendment right to a jury trial, as interpreted by *Booker*, by adding fifteen points for OV 5 (psychological injury to a member of the victim's family), ten points for OV 17 (wanton or reckless disregard for the life of another), ten points for OV 18 (operating a motor vehicle with BAL over 0.10 but less than 0.15), and ten points for OV 19 (interfering with or attempting to interfere with the administration of justice). *See* Pet at 27-28.

-11-

**Swanson's eighth argument on appeal was that the trial court should have granted her motion for a new trial because the verdict on both counts was against the great weight of the evidence.**  *Swanson*, 2005 WL 1459495 at *14.  After reviewing the elements of the two offenses and the evidence presented at trial, the Michigan Court of Appeals rejected this argument on its merits.  *Swanson*, 2005 WL 1459495 at *14-15 (count one, OUIL causing death) and *16 (count two, failing to stop at the scene of an accident resulting in serious personal injury or death of a person).

**Swanson's ninth argument on appeal was that the trial court should have granted her motion for a directed verdict because the prosecution offered no direct evidence that she drove her vehicle while intoxicated and that her driving while intoxicated was a substantial cause of the pedestrian's death.**  *Swanson*, 2005 WL 1459495 at *16.  The Michigan Court of Appeals rejected this claim on its merits, relying on the same evidence used to affirm the denial of Swanson's motion for a new trial due to allegedly insufficient evidence.

Swanson does <u>not</u> assert the alleged insufficiency of the evidence to support the convictions as a ground for federal habeas relief.

**Finally, Swanson asserts an assignment of error that she admits was not raised at trial or on direct appeal because it could not have been:  while her direct appeal was pending, the Michigan Supreme Court re-defined the causation element of the offense of OUIL causing death.**  *See* Pet at 19.  Specifically, *People v. Schaefer*, 471 Mich. 418 (2005) held that the prosecution must show not only that the defendant's operation of the motor vehicle was the *factual* ("but for") cause of the decedent's death, but also that it was the *legal*, i.e., proximate cause of the death.  *See* Pet at 19.  Swanson points out that the Michigan Supreme Court has expressly made this

rule retroactive.  *See* Pet at 19-20 (citing *Schaefer*'s footnote 51).  Swanson contrasts the instruction

required by *Schaefer* with the standard jury instruction given by the trial judge as follows:

> [T]he trial judge did not define proximate causation in terms of the reasonable
> foreseeability of the pedestrian's conduct as required by *Schaefer*.  The Michigan
> Supreme Court's decision in *Schaefer* requires the jury to have a different focus than
> the definition of causation in the Standard Jury Instruction.  That instruction focuses
> on the effect of alcohol on the defendant's role in causing the accident.
>
> The test in *Schaefer* focuses on the nature of the conduct of the deceased or some
> other outside force bringing about the accident.  The jury should have been instructed
> to focus on the foreseeability of the deceased's conduct and whether that conduct
> broke the causal chain.  The trial judge's failure to give an instruction on the impact
> of the decedent's contributory negligence insured that the jury did not have the
> correct focus in deciding the causation issue.  Moreover, the trial judge refused to
> give the Petitioner's [requested] instruction on contributory negligence as to Count
> I, limiting its application to a lesser included offense of negligent homicide.  This
> failure to instruct, when combined with the lack of a proximate cause instruction,
> eliminated a key defense and prevented the jury from making an accurate
> determination on the causation element of the offense.
>
> $$* \quad * \quad *$$
>
> There is no question that the defense was arguing the contributory negligence of the
> pedestrian as it relates to the Petitioner's liability as to Count I.  However, in
> instructing the jury, the trial judge failed to tell the jury that they could find the
> Petitioner "not guilty" of Count I if they found that the pedestrian's negligence was
> either the sole cause of the accident or that, under the conditions that existed, the
> Petitioner's driving, intoxicated or not, was . . . not the proximate cause of the
> pedestrian's death.
>
> $$* \quad * \quad *$$
>
> The context of the instruction on the impact of the deceased's negligence could only
> have been related by the jury to the lesser included offense of negligent homicide .
> . . .  The trial judge positioned the instruction after giving the elements of negligent
> homicide and after defining "ordinary negligence" and "slight negligence."  When
> ruling on the defense objections to instructions, the trial judge specifically indicated
> that they believed that the contributory negligence defense applied only to the
> negligent homicide lesser included offense.  (10-6-93 Tr 138-139)
>
> *There was no rational way for the jury to know that the negligence of the deceased*
> *was a legal defense to the more serious offense of operating a motor vehicle while*
> *intoxicated causing death.  That offense does not require a showing of negligence.*
> *However, it does require proof that the intoxicated driving was a substantial cause*
> *of the death.*  The negligence of the deceased can preclude such a finding.  It was
> imperative that the jury had been so instructed.

-13-

Pet. at 20-21 & 22 (¶ breaks & emphasis added).  Swanson further argues that the trial court's instructions on how the jury should consider the potential verdicts exacerbated the error by making the jury less likely to even consider the decedent's contributory negligence.  Swanson explains,

> The court specifically told the jurors that they need not even consider the lesser included offense if they agreed the Petitioner was guilty of the offense of driving while intoxicated causing death.  (10-6-04 Tr 141) Therefore, in reviewing this matter, no one can be sure that the concept of the deceased's negligence was ever considered by the jury since they were told that it applied only to the negligent homicide lesser included offense.

Pet. at 24.

<u>The Michigan Supreme Court Declines Review.</u>

Asserting six assignments of error, Swanson sought review from the Michigan Supreme Court, which denied leave to appeal without opinion, stating only that she had not presented questions which merited further review.  *See People v. Swanson*, 711 N.W.2d 41 (Mich. Mar. 22, 2006).

<u>Motion to Dismiss for Failure to Exhaust Certain Claims in State Court.</u>

The respondent moved to dismiss the entire petition without prejudice because it contained an unexhausted claim, i.e., a claim that Swanson had not sufficiently "fairly presented" to Michigan's courts.  *See* Brief in Support of Motion to Dismiss the Petition without Prejudice for Lack of Exhaustion ("MTD") at 2.  Namely, the respondent contends that Swanson has not exhausted state-court remedies with regard to her claim, based on *People v. Schaefer* (Mich.), that the trial court violated her due-process rights by failing to instruct the jury that it could not convict on count one (OUIL causing death) unless it found that Swanson's operating a motor vehicle while intoxicated was both the factual *and the legal (proximate)* cause of the pedestrian's death.  *See* MTD at 2-3.

-14-

The respondent does not contend that Swanson could have raised this *Schaefer* instruction argument before the Michigan Court of Appeals. And the respondent acknowledges that Swanson did raise the *Schaefer* instruction argument in her unsuccessful application for review by the Michigan Supreme Court. The respondent contends, however, that instead of raising the *Schaefer* argument in the instant habeas petition, Swanson should have filed a motion for relief from judgment, pursuant to MCR 6.500 *et seq.*, in the Michigan state trial court where she was convicted. *See* MTD at 3. The respondent argues that it is particularly important to give Michigan's courts the opportunity to address Swanson's argument (that the count-one causation instructions violated her rights under the standard enunciated by the Michigan Supreme Court in *Schaefer*) because the determination of the elements of a state-law offense is a matter of substantive state law. *See* MTD at 3-4 (quoting *Sanford v. Yukins*, 288 F.3d 855, 860-62 (6th Cir. 2002) ("'What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.'") (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991))). The respondent concludes its motion by stating, "Petitioner's revised instructional-error claim, which now argues that the trial court failed to instruct on every elements [sic] of the offense, is based on retroactive application of a Michigan Supreme Court case changing state law. The state courts should have the first opportunity to address this issue." MTD at 4.

The Report and Recommendation.

On September 9, 2008, the Honorable Ellen S. Carmody, United States Magistrate Judge, issued a Report and Recommendation ("R&R") recommending that the motion to dismiss be granted in part and denied in part. Specifically, the Magistrate recommended the following legal

-15-

conclusions: (1) Swanson failed to exhaust state-court remedies as to her *Schaefer* claim, *see* R&R at 4-7; (2) nonetheless, because the AEDPA habeas statute of limitations has expired, it would be unjust to dismiss and leave Swanson unable to pursue federal habeas relief after she has exhausted her state-court remedies on that claim, *see* R&R at 7; (3) Swanson failed to exhaust state-court remedies as to her *Blakely* claim, because she raised it for the first time before the Michigan Supreme Court, *see* R&R at 8 n. 1. The R&R recommends that the petitioner be directed to amend her petition to assert only properly-exhausted claims *or* to seek a stay so that she may return to state court to properly exhaust the *Schaefer* and *Blakely* claims. *See* R&R at 7-8.

On September 23, 2008, Swanson timely filed objections to part of the R&R. The respondent has not filed objections to the R&R, and the time for him to do so has expired. For the reasons that follow, the court will sustain Swanson's objections in part and overrule them in part. The court will adopt the R&R with modifications, denying the motion to dismiss.

**The court concludes that Swanson has properly exhausted state-court remedies with regard to all the claims in her habeas petition except the *Schaefer* jury-instruction claim.**

**Swanson *did* properly exhaust her *Booker* claim.** She sought and obtained leave from the Michigan Court of Appeals to file a supplemental brief raising that assignment of error on direct appeal. *See People v. Swanson*, 2005 WL 1459495, *14 (Mich. App. June 21, 2005) (p.c.) (P.J. Kelly, JJ. Sawyer & Wilder) (addressing Swanson's *Booker* claim on its merits).

**Swanson did not properly exhaust her *Schaefer* jury-instruction claim.** As stated by the R&R, a habeas claim is not properly exhausted if the petitioner raised it for the first time in an application for discretionary review by the state supreme court and that court opted not to review the claim. *See* R&R at 5 (citing, *inter alia*, *Clinkscale v. Carter*, 375 F.3d 430, 440 (6th Cir. 2004)

-16-

(following *Castille v. Peoples*, 489 U.S. 346, 351 (1989))).  "Unless the state supreme court actually grants leave to appeal and reviews the issue, it remains unexhausted in the state courts."  *Sueing v. Palmer*, 2008 WL 4820505, *3 (W.D. Mich. Oct. 31, 2008).[1]

Nonetheless, the court agrees with the Magistrate Judge that it would be unjust to dismiss Swanson's *Booker* claim, because that would likely result in that claim being barred by AEDPA's statute of limitations.  The Magistrate Judge suggested staying this action to afford Swanson the opportunity to file a motion for relief from judgment in Michigan state trial court on *Schaefer* jury-instruction grounds, but Swanson argues that recent developments make such an accommodation inadequate.  Swanson explains,

> [S]ince the original filing [of the habeas petition] on March 21, 2007, Petitioner's status has changed requiring that the Court immediately address all of the federal claims at issue in this case.  On or about June 3, 2008 Petitioner was released on parole by the Respondent.  Her parole is tentatively scheduled for two years.  It is unlikely that any state court review of the claimed "unexhausted" issue will be completed before her parole is completed.  Under these circumstances the petitioner might be subject to dismissal due to mootness.  If such a dismissal was ordered, the federal constitutional issue would be effectively immune from federal court review.

Swanson's Objections at 4.

The court understands Swanson's concern on this score.  Neither sympathy nor a judge's "policy concerns", however, can justify departing from precedent by usurping the state courts' role, and their right, to address the state-law issues presented by Swanson's *Schaefer* claim in the first instance. *Cf. United Steelworkers, AFL-CIO-CLC v. St. Gobain Ceramics & Plastics, Inc.*, 505 F.3d

---

[1]

*See, e.g..,* dismissing habeas claim where petitioner raised issue for the first time in application for discretionary review by Michigan Supreme Court and that court refused review:

*Rupert v. Berghuis*, 2008 WL 4937873, *2 (W.D. Mich. Nov. 14, 2008) (Bell, J.);
*Lauderdale v. Palmer*, 2007 WL 2694421, *2 (W.D. Mich. Sept. 11, 2007) (Miles, J.);

417, 437 (6th Cir. 2007) (*en banc*) (Sutton, J., joined by Griffin, J., *et al.*) ("[W]e cannot depart from

usual practice based on perceived policy concerns . . . .") (internal quote marks & citations omitted).

      The question of *Schaefer*'s effect on the causation element of the count-one charge

substantially implicates the interpretation of state law, on an issue where the Michigan Supreme

Court has apparently recently changed or refined its view. Notwithstanding the possible mootness

risk to Swanson's *Schaefer* habeas claim, this court must defer to Michigan's state courts before

considering whether the claim warrants federal habeas relief. *See Railey v. Webb*, 540 F.3d 393, 399

(6th Cir. 2008) (the Supreme Court has "repeatedly held that a state court's interpretation of state

law, including one announced on direct appeal of the challenged conviction, binds a federal court

sitting in habeas corpus.") (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citations omitted));

*Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (when assessing a habeas petition, a federal court

"must defer to a state court's interpretation of its own rules of evidence and procedure").[2]

      Nonetheless, while this court cannot address Swanson's *Schaefer* claim before the Michigan

---

[2]

    *See, e.g., Ledesma v. Howe*, 2008 WL 4239019, *9 (W.D. Mich. Sept. 10, 2008) (Bell, J.)
("Petitioner's second habeas corpus claim charges his counsel with ineffective assistance, arising
from counsel's failure to object to the assessment of ten points under Offense Variable 9. * * * The
state Court of Appeals rejected that claim on its merits. The court is therefore bound, in assessing
petitioner's claim of ineffective assistance of counsel, to conclude that the assessment of ten points
under OV 9 was not clear error.");

    *Anderson v. Bell*, 2007 WL 3036530, *1 (W.D. Mich. Oct. 16, 2007) (Miles, J.) ("To the
extent that Petitioner is challenging the scoring of his [OV]s under state law, he is not entitled to
federal habeas relief. '[A] state court's interpretation of state law . . . binds a federal court sitting
on habeas review.'") (quoting *Bradshaw*, 546 U.S. at 76, & citing, *inter alia*, *Austin v. Jackson*, 213
F.3d 298, 301-02 (6th Cir. 2000)), *recon. denied*, 2007 WL 4327553 (W.D. Mich. Dec. 10, 2007);

    *McElhaney v. McKee*, 2007 WL 851644, *5 (W.D. Mich. Mar. 16, 2007) (Quist, J.) ("The
state court's denial of petitioner's request for DNA testing under MICH. COMP. LAWS § 770.16 is not
a basis for federal habeas relief. First . . . '[a] state court's interpretation of state law . . . binds a
federal court sitting in habeas corpus.'") (quoting *Bradshaw*, 546 U.S. at 76).

state courts, it can at least refrain from dismissing that claim.  This will ensure that the claim is not

time-barred if Swanson later seeks to pursue it here following exhaustion in the state courts.[3]


### ORDER

Petitioner's objections [doc. # 44] are **SUSTAINED in part** and **OVERRULED in part.**

The Magistrate's R & R [document # 43] is **ADOPTED in part** and **REJECTED in part.**


The motion to dismiss the complaint without prejudice [document # 9] is **DENIED**.

The petitioner **MAY PROCEED** on all the claims in her habeas petition except the *Schaefer*

jury-instruction claim.  **That claim alone SHALL be held in abeyance in this court** while

Swanson raises it via a motion for relief from judgment in the Michigan state trial court.

This is <u>not</u> a final and appealable order.

**IT IS SO ORDERED this 9th day of January, 2009.**

---

[3]

The respondent's motion to dismiss asks the court to dismiss the entire petition due to Swanson's failure to properly exhaust her *Schaefer* jury-instruction claim, even though the respondent has not contended that Swanson failed to exhaust any of her other federal habeas claims.

Federal district courts are no longer permitted to dismiss properly-exhausted habeas claims merely because the petition also contains unexhausted claims.  "[I]n *Jones v. Bock*, – U.S. –, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), the Supreme Court held that under the Prison Litigation Reform Act of 1995 ('PLRA'), courts should not dismiss prisoner complaints in their entirety when the litigant presents both exhausted and unexhausted claims."  *Jones Bey v. Johnson*, 248 F. App'x 675, 676 (6th Cir. 2007) (<u>Siler</u>, Clay, E.D. Ky. D.J. William Bertlesman) ("In accordance with *Jones*, we now reach the merits of Jones Bey's exhausted claims . . . .").

Rather, "where a complaint contains both exhausted and unexhausted claims, the district court should proceed with the exhausted claims while dismissing the unexhausted claims, rather than dismissing the complaint in its entirety."  *Okoro v. Hemingway*, 481 F.3d 873, 874 (6th Cir. 2007) (citing *Jones*, 127 S.Ct. at 921 and 923-25).

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge